## Pillot, Demandante y Apelante, v. Domínguez et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Guayama en pleito sobre tercería de bienes inmuebles.

No. 1491.—Resuelto en diciembre 15, 1916.

Tercería de Bienes Inmuebles—Resolución Definitiva de los Derechos de las Partes.—En los juicios sobre tercería de bienes inmuebles, debe resolverse de una manera definitiva la cuestión fundamental envuelta, a saber, a quién pertenecen los bienes embargados o próximos a venderse en la ejecución de alguna sentencia. La verdadera oportunidad que las partes tienen para fijar sus derechos en casos de esta naturaleza, es precisamente el juicio de tercería que debe sustanciarse de acuerdo con la ley por los trámites del Código de Enjuiciamiento Civil.

Id.—Examen de las Pruebas.—Examinada toda la prueba en este caso. tal como aparece de la exposición aprobada por el juez inferior, *se resolvió:* que habiendo la tercerista justificado el dominio de la casa embargada, debe declararse su demanda con lugar.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. F. Cervoni Gely.*

El apelado, C. Domínguez Rubio, compareció en nombre propio.

Los demandados, Eugenio Balestier y Josefa Pillot, no comparecieron.

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

El presente es un caso sobre tercería de bienes inmuebles. El demandado C. Domínguez Rubio en cierto pleito sobre cobro de pesos que siguiera contra el otro demandado Eugenio Balestier, embargó una finca urbana que la demandante Carlota Pillot reclama como suya.

La tercerista alegó que había adquirido dicha finca en 1890 por compra a María Juliana Colón, quien a su vez la compró en 1888 a Alejandro López, habiéndole adquirido éste de Rebeca Jimbo en 1884. En el acto de la vista presentó prueba documental y testifical en apoyo de sus alegaciones.

Los demandados negaron que la casa perteneciera a la tercerista y presentaron prueba a los efectos de demostrar

que era de la propiedad de la sociedad de gananciales constituída por el demandado Balestier y su esposa Josefa Pillot.

Y sometido así el caso a la decisión de la corte, ésta dictó sentencia desestimando la demanda, "reservando a los demandados los derechos que tengan para discutir el dominio de la casa." Dicha sentencia, contra la cual interpuso la demandante el presente recurso de apelación, se basó en las siguientes conclusiones de hecho y de derecho:

"*Hechos Probados.*—1. Que demandante y demandados son mayores de edad y residentes de este Distrito Judicial.

"2. Que en quince de septiembre de 1890, la tercerista Carlota Pillot compró a Doña Juliana Colón una casita de maderas techada de tejamaní, sita en la calle de la Cruz de Guayama, colindante por el norte con la compradora, por el sur con el teatro, por el este con Doña Adela Tadgreen, y por el oeste con la citada calle de la Cruz, por el valor de $80; que posteriormente dicha casita fué sustituída por otra de maderas, techada de zinc, cuyo valor es de $600, sin que de la prueba practicada pueda la corte determinar si la anterior fué destruída en su totalidad fabricándose la actual, y por quién fué ésta fabricada.

"3. Que de la prueba practicada aparece como hecho cierto que la finca embargada por el demandante C. Domínguez Rubio en el pleito seguido contra Eugenio Balestier por cobro de dinero, no es la misma que adquirió Carlota Pillot de Juliana Colón.

"4. Que la prueba practicada por las partes es tan contradictoria entre sí que la corte no puede estimar como probado quién sea el dueño de la actual casa ni cuál de los litigantes pertenecientes a la familia Pillot efectuó los gastos de su fabricación de modo que pueda la corte llegar a una conclusión exacta de quién es el verdadero dueño de la finca.

"*Conclusiones de Derecho.*—1. Que las partes litigantes tienen capacidad para demandar y ser demandadas.

"2. Que la tercerista no tiene derecho al remedio que solicita, porque de la prueba no aparece sea ella la dueña de la casa que radica en el solar en que ubicaba la que ella compró, reservando la corte a las partes el derecho de discutir mediante el pleito correspondiente, el dominio de la casa."

Para la justa decisión de este recurso se hace necesario fijar la naturaleza del juicio de tercería regulado actualmente

en Puerto Rico por una ley especial de la Asamblea Legis-
lativa.   Véase la compilación de 1911, sección 5260, y si-
guientes:

La "tercería" ha sido definida por Escriche como "la
oposición hecha por un tercero que se presenta en un juicio
entablado por dos o más litigantes, ya sea coadyuvando el
derecho de alguno de ellos, ya deduciendo el suyo propio con
exclusión de los otros."   4 Escriche 1072.

Manresa en sus comentarios a la Ley de Enjuiciamiento
Civil, ahondando más en la materia, dice:

"Se da en el foro el nombre de tercería a la oposición que hace
o reclamación que deduce un tercer litigante en juicio pendiente ya
entre otros interesados, y el de tercer opositor, al que deduce esa
reclamación.   Nuestros prácticos daban el nombre de excluyente a la
tercería y al opositor cuando éste alega en su favor un derecho pre-
ferente al de los otros litigantes; y de coadyuvante, cuando se dirige
a ayudar o sostener la pretensión de cualquiera de éstos.   Pero real-
mente es innecesaria e impropia esta distinción.   Un tercero que
tenga interés directo en un pleito, por ser igual su derecho al de una
de las partes, puede acudir a él para coadyuvar la acción y preten-
siones que le interesen, y a ese tercero se le ha dado y se le da con
propiedad el nombre de coadyuvante; pero es impropio dar la de-
nominación de tercería a la acción que ejercita, porque no deduce
una tercera pretensión que sea contraria o excluyente de lo que pre-
tenden los otros dos litigantes.   Por esto la ley procesal no reconoce
directa ni indirectamente esa distinción de las tercerías, y sí la única
real y positiva, que es la de dominio y la de mejor derecho definidas
en el artículo 1532, pertenecientes ambas a la clase de las que antes
se llamaban excluyentes; y esto a pesar de haber declarado en el
artículo 1543 que las disposiciones sobre tercería en el juicio ejecu-
tivo son aplicables a las que se interpongan en cualquier otro juicio
o incidente en que se proceda por embargo y venta de bienes."   5
Manresa, Ley Enjuiciamiento Civil, 639 y 640.

Cuando en 1904 se cambió radicalmente nuestra Ley Civil
adjetiva, el legislador prescribió reglas claras y precisas
sobre la materia general de intervención (véase el título 4°.
del Código de Enjuiciamiento Civil vigente), y fijó un pro-
cedimiento especial para los casos en que los bienes embar-

gados a los efectos de la ejecución de la sentencia fueran reclamados por un tercero como suyos. (Véase el artículo 247 del indicado código, tal como fué aprobado en 1904.) Dicho procedimiento, en el cual intervenía un jurado de seis hombres, fué derogado por la ley sobre tercerías a que hemos hecho referencia, aprobada en 14 de marzo de 1907. Dicha ley en un principio se refería sólo a los casos de tercería sobre bienes muebles, pero en 1908 se extendió también a los inmuebles, insertándose al efecto en ella la sección 16 (*a*), que es la reguladora de este caso, y que copiada textualmente dice así:

"La tercería respecto a bienes inmuebles se iniciará por demanda que formalizará el reclamante contra todas las personas que tengan interés en el asunto y el juicio se sustanciará por los trámites del Código de Enjuiciamiento Civil. *Disponiéndose,* que en las tercerías de esta clase sólo podrá suspender el tercerista una orden de ejecución para el trámite de subasta mediante interdicto prohibitorio (*injunction*) de acuerdo con la ley definiendo los *injunctions* aprobada en marzo 8 de 1906; y *disponiéndose, además,* que para conocer del interdicto tendrá jurisdicción la misma corte ante la cual se sustancia la tercería."

Se trata, pues, de un juicio completo en el que debe resolverse de una manera definitiva la cuestión fundamental envuelta en el mismo, a saber, a quién pertenecen los bienes embargados o próximos a venderse en la ejecución de alguna sentencia.

Si examinamos la sentencia apelada, veremos que por ella se desestima la demanda, pero reservando a los demandados (*sic*) los derechos que tengan para discutir el dominio de la casa en cuestión. Y si analizamos los hechos probados y las conclusiones de derecho en que se basa la sentencia, encontraremos que la corte sentenciadora quedó convencida de que la tercerista fué dueña de cierta casa que se sustituyó luego por otra, sin que pudiera determinarse si la casa anterior fué destruída totalmente fabricándose la actual y por quién fué ésta fabricada, y concluyó que la tercerista no tenía de-

recho al remedio que solicitaba, debiendo, por tanto, desestimarse su demanda reservando a las partes el derecho de discutir mediante el pleito correspondiente el dominio de la casa.

Se ve, pues, que estaba fija en la corte la idea de que al dictar su sentencia no resolvía en definitiva los derechos de las partes. Para ella esas partes debían tener otra oportunidad para discutir el dominio de la casa. Tal criterio fué erróneo, a nuestro juicio. La verdadera oportunidad que las partes tienen para fijar sus derechos en casos de esta naturaleza, es precisamente el juicio de tercería que debe sustanciarse, de acuerdo con la ley, por los trámites del Código de Enjuiciamiento Civil.

Una simple inspección de los autos demuestra que las alegaciones que se hicieron y las pruebas que se practicaron en este pleito, son tan amplias como pudieran haberlo sido en cualquier acción que en vez de titularse sobre tercería se hubiera titulado sobre reivindicación.

Siendo esto así, ¿cómo debe resolverse el recurso de apelación establecido? ¿Debemos simplemente revocar la sentencia apelada y devolver el pleito a la corte de su origen para que mediante la celebración de un nuevo juicio haga lo que dejó de hacer, esto es, resolver en definitiva los derechos de las partes? ¿Debemos, de acuerdo con lo prescrito en el artículo 306 del Código de Enjuiciamiento Civil, enmendado en 1906 (Sección 5350 de la Compilación de 1911) pronunciar la sentencia que debió haber dictado el tribunal inferior?

A nuestro juicio es preferible adoptar el último criterio. De tal modo no dilataremos más la resolución definitiva de este pleito iniciado en la Corte Municipal de Guayama desde enero de 1915, tramitado de nuevo en la corte de distrito y elevado por último a este tribunal.

Como hemos dicho, la tercerista reclama como suya cierta casa embargada por uno de los demandados en un pleito, en cobro de pesos, seguido contra el otro. Negado el derecho de la tercerista, ésta, que según la exposición del caso es una negra que fué esclava y que había nacido antes de fundarse

la ciudad de Guayama, presentó como prueba un documento
privado, cuyas firmas fueron reconocidas, creditivo de que
había comprado en 1890 una casa en la calle de la Cruz; una
cuenta corriente con Juan Bautista Llinás de la cual resulta
que la demandante tenía en julio 31 de 1900 en poder de
Llinás un haber de $106, que Llinás entregó en diversas par-
tidas para compra de maderas y clavos, y para pago de. jor-
nales, y un permiso del Concejo Municipal de Guayama otor-
gado a los efectos de que la demandante pudiera ensanchar
una casa que tenía en la calle de la Cruz. También presentó
la tercerista prueba testifical consistente en su propia decla-
ración y en la de los testigos Juan Bautista Llinás, Carlos
Vieta, Luis Texidor, Martina Pillot, Pedro María Morel y
Bernardo Pillot.

La tercerista explicó cómo había comprado la casa; cómo
la había dañado el ciclón de San Ciriaco; cómo había orde-
nado su composición, pagando ella misma los gastos, y cómo
la dió a su sobrina Josefa para que la viviera. El testigo
Llinás reconoció el documento de compra, y la cuenta co-
rriente y explicó las partidas de la última. El testigo Vieta
depuso sobre el hecho de la muerte de María Juliana Colón,
y el testigo Texidor reconoció el permiso otorgado por el
ayuntamiento a Carlota para reparar una casa de la calle
de la Cruz, ensancharla y techarla. Martina Pillot, hermana
de la tercerista y madre de la esposa del demandado Bales-
tier, dijo que cuando Carlota compró la casa Pepa Pillot no
tenía casa y le dijo Carlota, "te voy a dar la casa para que
vivas todo el tiempo que quieras"; que desde entonces Pepa
Pillot la vive; que la casa estaba cobijada de tejamaní
cuando Carlota la compró y la tormenta la descobijó, por lo
cual hubo que componerla; que el dinero con que se com-
puso la casa ella lo iba a coger en casa de Bautista Llinás
donde Carlota tenía fondos; que muchos años después vol-
vió a componer la casa con dinero de ella, sin un centavo de
Balestier, de quien la casa no ha sido jamás. El testigo·
Vieta, carpintero de oficio, recompuso la casa agregándola

dos veces, siempre por cuenta de la tercerista que le pagó. El testigo Morel, pintor, trabajó en la casa antes y después del ciclón, llamado la primera vez por Carlota y la segunda por Pepa Pillot. Y el testigo Bernardo Pillot, carpintero, depuso que conocía la casa embargada a Eugenio Balestier en la cual trabajó en 1901 por cuenta de Carlota Pillot; que la tormenta desniveló la casa y los carpinteros la nivelaron, la repararon y le hicieron un martillo; que en 1909 el testigo le sacó balcón por cuenta de Carlota Pillot.

Tal fué, en resumen, la prueba de la tercerista. Examinemos la de los demandados C. Domínguez Rubio, un abogado de Guayama, demandante en el pleito sobre cobro de pesos, y Eugenio Balestier, demandado en dicho pleito. La demandada Josefa Pillot, esposa del demandado Balestier, que tenía pendiente con su marido un pleito de divorcio, fué llamada a declarar y depuso en favor de la tercerista, como veremos más adelante.

La declaración del demandado Balestier, copiada textualmente de la exposición del caso, es como sigue:

"Esposo de Josefa Pillot. Dice que la casita del documento fué antes de Carlota Pillot. Que cuando él se casó en el 1893, vivía con su esposa en casa alquilada, pero últimamente, se fueron a la casita esa, y deseando tener casa propia, le dijo un día a su esposa: 'Pepa, mira; dile a tu tía si quiere vender esa casita.' Que Pepa habló con su tía, y ésta la dijo que sí; que le dieran dos o tres pesos mensuales. Que hizo la casa en dos o tres secciones. En la parte de atrás hizo una media-agua; y en mil novecientos tres, cuando tuvo dinero, hizo desbaratar la casa pequeña y construyó la grande. Entonces sacó el balcón. Después, en 1909, un tal Manuel Modesto, hizo el martillo, porque primero había llamado a Ezequiel Alonso y Carlos Vieta, pero por informalidades de estos dos, tuvo que llamar a Manuel Modesto. Luego llamó a Puchuco para pintarla, al cual le pagaba él. Y cuando terminó de pintarla, vino Arturo López a vivir en ella.

"Que desbarató la casita vieja con autorización de Carlota y comprada, pues si bien no hay documento, es asunto de familia. Se la compró pagándole dos o tres pesos mensuales. Que ajustó el trabajo con un tal Ramón Nazario y éste buscó operarios. Que Nazario

trabajó un día la primera semana, 5 la segunda y 4 la tercera a $1.25.
Benigno Nazario, trabajó 4 días la segunda, 4 la cuarta y 4 la quinta
a $1.25.   A preguntas de su abogado dice que no pidió permiso para
hacer esas edificaciones porque teniendo esos dineros para no gastar-
los, emprendió esos trabajos de carpintería y vino Tatato Vázquez,
alcalde interino, y le paralizó los trabajos, pero que los continuó con
permiso de éste.   Que después le alquiló la casa a Arturo López y
que nada le debe a Carlota Pillot.   Que siempre ha estado alquilada.
Que hace dos años que no vive en la casa, en cuyo tiempo le han
pagado los alquileres a Pepa Pillot, su esposa, que fué quien se hizo
cargo de alquilarla.   Que ni Carlota ni Martina Pillot pusieron un
centavo para construir la casa.

"*Repreguntas.*—Dice que le dijo a su mujer: 'entiéndete con tu
tía a ver cuánto quiere por la casita y se lo iremos pagando poco a
poco.'   Que cuando vino del campo, le preguntó a su mujer: '¿Qué
tal?' y le contestó: 'sí, que se lo pague poco a poco y le dé $3 o $3½.'

"*Pregunta.*—'¿Sabe usted si Pepa le llevaba esa suma a Carlota?'

"*Respuesta.*—'Yo creo en la honradez de ella.   Lo que sé es que
Carlota no se opuso a la fabricación de la casa nueva, y sé que Pepa
le daba el dinero, porque cuando hicimos la casa nueva, Carlota se
contentó.   Dice que el Puchuco que pintó la casa es el mismo que
declaró orita.   Dice que si Puchuco declaró que Martina era quien
le pagaba, no ha dicho la verdad.   Que hace más de dos años que
no vive con su esposa la cual vive con su madre de ella.' ''

Los otros testigos de la parte demandada lo fueron Gre-
gorio Burglara, carpintero, que trabajó, pagado por el de-
mandado Balestier, en la reconstrucción de la casa; Benigno
Nazario también carpintero que trabajó de igual modo que
el anterior; Natalio C. Soler, albañil, ocupado en igual forma
por Balestier; Arturo G. López, Secretario de la Corte Mu-
nicipal de Guayama, que vivió en la casa pagando el arren-
damiento a Balestier a quien adelantó 40 ó 50 pesos para
el baño.   Luis Texidor que explicó que el permiso del ayun-
tamiento presentado como prueba por la tercerista se refería
a una casa de la calle de la Cruz, cerca del mercado; José
Alonso, carpintero, que aseguró que la casita pequeña de la
tercerista que valía de sesenta a ochenta pesos se cayó con
el ciclón y luego Balestier fabricó otra que vale unos seis-

cientos; Alejandro López, primitivo dueño de la casita, que
dijo que en lugar de ella existe hoy una casa más grande
que no sabe quién la ha construído, habiendo visto a Bales-
tier algunas veces dirigiendo los trabajos que se hacían; y
Josefa Pillot, que, según la exposición del caso, declaró como
sigue:

"Esposa de Eugenio Balestier. El demandado Domínguez le
presentó la contestación de ella a una demanda de divorcio de su
esposo E. Balestier, en la que aparece ella alegando, que durante el
matrimonio adquirieron una casa en la calle de Venegas y otra en
la calle Carreras. El abogado de la demandante se opone a que
ella declare sobre eso, porque aunque Josefa Pillot alegara tal cosa,
su alegación no puede perjudicar a Carlota Pillot.

"La corte desestima la oposición. Excepción. Preguntaron, por
qué juró en la contestación de la demanda que la casa 'era suya y
de E. Balestier y ahora jura que es de Carlota Pillot y contesta que
ella no ha jurado que la casa sea de Balestier, pues la misma casa
adquirida durante el matrimonio de éste con ella, es una casa que
hay en la calle de la Carrera. Que si aparece jurado eso, es una
equivocación pues la casa en pleito es de su tía Carlota Pillot que
se la dió para vivirla, pero no para venderla. Preguntada que quién
paga las contribuciones de la casa. Contesta que Carlota Pillot, quien
siempre le ha dado dinero para pagarlas, pues la casa es de Carlota.
Que Balestier la amillaró a nombre de ella y que ella le llamó la
atención, a pesar de lo cual Balestier la declaró a nombre de Pepa
sin su autorización."

De la transcripción aparece además que se solicitó por los
demandados y se llevó a efecto por la corte una inspección
ocular. A ella se refiere el juez sentenciador al analizar la
prueba practicada así:

"La corte ha hecho un estudio detenido de la evidencia practi-
cada, y ha llevado a cabo la inspección ocular de la casa cuyo dominio
se discute. Esta es una casa de tamaño regular, con su balcón, de
piso de mampostería, techada de zinc, con varios compartamentos,
un martillo, su correspondiente cocina, cuarto de baño y de su exa-
men y de la prueba practicada, sólo puede llegar a la conclusión,
y es que la casa embargada no es la casa que compró Carlota Pillot
en el año 90, pues aquélla era una casa de dos habitaciones, techada

de tejamaní, y de un valor de 80 pesos moneda antigua.  En el solar en que ubicaba dicha casa, se ha fabricado la que actualmente existe.  Las declaraciones prestadas por los testigos, dadas por familiares y amigos de los interesados, resultan completamente contradictorias y el modo de declarar de algunos de los testigos, que pueden estar mejor empapados de los hechos ocurridos, tienen tal carácter de interés que la corte en una apreciación fría de la evidencia, no puede darles crédito alguno.  Si hemos de dar crédito a estas declaraciones, tendríamos que todos los interesados y parte de la familia Pillot, así como el demandado Balestier, han sufragado los gastos de la fabricación y han invertido sumas en materiales para la misma.  Por lo cual la corte considera que la evidencia presentada es insuficiente para resolver la corte quién es el actual dueño de la casa.''

Con respecto al origen de la casa, no hay duda alguna. Todos están conformes en que fué de la tercerista.

Con respecto a si la casa primitiva se destruyó por completo y se sustituyó por la que actualmente existe, o fué transformándose poco a poco, y en uno y otro caso quién pagó la nueva edificación o las transformaciones de la antigua, la prueba es contradictoria.  La corte sentenciadora no resolvió en verdad el conflicto y no es por tanto aplicable a éste la jurisprudencia repetidamente establecida para los casos de evidencia contradictoria.

A nuestro juicio, la balanza debe inclinarse en pro de la tercerista.  Examinada aisladamente su prueba, es suficiente para justificar el dominio de la casa en cuestión.  Ella demuestra que la tercerista adquirió la casa por compra.  Por ella se admite que la casa fué dañada por el ciclón de San Ciriaco, pero se prueba que fué recompuesta, no sólo por declaraciones de testigos, si que también por una cuenta corriente creditiva de la inversión de más de cien pesos en materiales y jornales.  En ella hay datos de otras reparaciones hechas con posterioridad.  Un testigo, de oficio carpintero, afirma que en 1909 le sacó balcón por cuenta de la demandante.

Las manifestaciones del demandado Balestier con respecto a la compra de la casa primitiva a la demandante, son tan

vagas, que no pueden servir de base para declarar justificada la existencia del contrato. Constituyen la única prueba aportada sobre extremo tan fundamental y ni siquiera contienen dato exacto alguno con respecto al precio total de la compra.

Que el demandado Balestier hiciera algunas reparaciones en la casa y las pagara con dinero suyo, es compatible con el dominio de la casa a favor de la demandante. La demandante, según manifestó uno de sus testigos, ''hizo el buen corazón de darle donde vivir'' a su sobrina, espósa del demandado Balestier. Parece que las buenas relaciones de familia continuaron por mucho tiempo y no es extraño que Balestier que nada pagaba por la casa donde vivía, la mejorara constantemente. Tal vez él y su esposa tenían fundadas esperanzas de que la casa algún día llegaría a ser de ella por completo. Pero la paz del matrimonio se altera y es cuando se establece el divorcio entre Balestier y su esposa que se demanda a Balestier en cobro de pesos y se embarga la casa para responder de la efectividad de la sentencia que pudiera dictarse en dicho pleito, circunstancias todas que apreciadas en conjunto favorecen a nuestro juicio a la parte demandante.

Difícil es en verdad resolver conflictos de esta naturaleza; pero, actuando con ánimo de hacer justicia, dentro, desde luego, de las limitaciones de la inteligencia humana, opinamos, como dijimos anteriormente, que la balanza debe inclinarse a favor de la demandante, y en tal virtud que debe declararse su demanda con lugar, sin especial condenación de costas.

> *Revocada la sentencia apelada y dictada otra declarando que la tercerista Carlota Pillot es dueña de la casa embargada en el pleito en cobro de pesos seguido por C. Domínguez Rubio contra Eugenio Balestier, a los efectos de asegurar la efectividad de la sentencia que pudiera dictarse en el mismo, debiendo en tal virtud dejarse sin efecto dicho embargo, con los*

*demás pronunciamientos de ley.   Cada
parte pagará sus costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.