AMELIO E. BLONDET, tercerista, demandante y apelante, *v.* SUCRS. DE TOMÁS CANO & Co., S. EN C., y EUGENIO DALMAU, demandados y apelados.

No. 3322.—*Visto:* Noviembre 18, 1924. *Resuelto:* Mayo 20, 1925.

1. EMBARGOS—RECLAMACIONES POR TERCERAS PERSONAS—TERCERÍAS—PRUEBAS—CARÁCTER FALSO O SIMULADO DEL TÍTULO DEL TERCERISTA.—Un demandado en tercería que alega especialmente como defensa en la contestación la simulación y falsedad del título del tercerista puede presentar prueba tendente a demostrar el carácter de falso, fraudulento y simulado de tal título. (*Alvarez v. Sucrs. de N. Vilaró, S. en C.,* seguido.)

2. EMBARGOS—RECLAMACIONES POR TERCERAS PERSONAS—TERCERÍAS—PRUEBAS—FALTA DE TÍTULO DEL TERCERISTA.—El demandado en tercería tiene derecho a probar la falta de título en el tercerista demostrando que la persona de quien él trae causa, aún no siendo ésta parte en la tercería, carecía de título para transmitirlo.

3. EMBARGOS—RECLAMACIONES POR TERCERAS PERSONAS—TERCERÍAS—PRUEBAS—FALTA DE TÍTULO DEL TERCERISTA.—Examinada la prueba en este caso se resolvió que ella es suficiente para sostener la simulación del título del tercerista y el conocimiento que tenía éste de la simulación del título de la persona de quien él traía causa.

SENTENCIA de *Gabriel Castejón,* J. (Guayama), declarando sin lugar la demanda, sin costas. *Confirmada.*

*José J. Aponte,* abogado del apelante; *Manuel A. Martínez Dávila,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

La mercantil Sucrs. de Tomás Cano & Co., S. en C., siguió un pleito en cobro de pesos contra Eugenio Dalmau y

el 16 de marzo de 1920 le embargó una casa, que no está inscrita en el registro de la propiedad.

Cuando esa casa iba a ser vendida para el cumplimiento de la sentencia en ese pleito, don Amelio E. Blondet estableció juicio de tercería contra las partes en aquel pleito para que el embargo fuese levantado por ser la casa de su propiedad, alegando que con anterioridad al embargo pertenecía a doña Elisa Dalmau, la que en mayo de 1921 la vendió al Dr. José María Muñoz pero luego esa venta fué rescindida y el 19 de diciembre de 1921 doña Elisa Dalmau se la vendió al tercerista Blondet, todo lo que consta en escrituras públicas.

Eugenio Dalmau fué declarado rebelde en la tercería pero la mercantil demandada se opuso a esa reclamación alegando como defensas: primera, que el 8 de julio de 1919 Eugenio Dalmau traspasó en venta simuladamente la propiedad de la casa a favor de su hermana doña Elisa Dalmau sin mediar precio alguno o consideración, hecho conocido por el tercerista Blondet quien era entonces acreedor de Eugenio Dalmau por la cantidad de $550 y quien consiguió que doña Elisa le reconociera ese crédito sin que ella le debiera cantidad alguna sino su hermano Eugenio, con quien se entendió Blondet para que doña Elisa le reconociera el crédito: segunda, que la mercantil embargó la casa antes de que doña Elisa la traspasara a Blondet, hecho que a éste constaba porque en diciembre de 1921 demandó a doña Elisa y solicitó el embargo de la casa pero desistió de él por haber sido embargada antes por la mercantil y sabía que ésta alegaba que la casa era de Eugenio Dalmau porque a instancia de la mercantil y por esa alegación fué suspendida una ejecución de Blondet contra la casa: tercera, que al tener conocimiento Amelio E. Blondet de que la casa se hallaba embargada y porque su crédito no era preferente, hizo que doña Elisa Dalmau le traspasara en venta dicha casa para pagarle su crédito de $550 que don

Eugenio le debía y no doña Elisa como simuladamente se hizo constar en la escritura de reconocimiento de crédito de hipoteca: y cuarta, que la casa siempre ha sido de Eugenio ' Dalmáu, aunque algunas veces estuvo a nombre de su hermana doña Elisa, otra del Dr. José María Muñoz y últimamente del tercerista, todos cuyos hechos eran conocidos de Amelio E. Blondet a quien constaba que durante la vigencia del embargo de la mercantil la casa siempre estuvo en posesión de Eugenio Dalmau.

Después del juicio la corte inferior dictó sentencia declarando sin lugar la demanda de tercería y se interpuso esta apelación por la parte a quien perjudica.

[1] Hemos transcrito en lo substancial las defensas alegadas por la mercantil apelada porque el tercerista solicitó en la corte inferior que fueran eliminadas y sostiene ahora que fué error de la corte no haber decretado la eliminación de esas defensas porque no siendo partes en la tercería doña Elisa Dalmáu y el Dr. José María Muñoz no pueden ser atacados como inexistentes contratos en que ellos intervinieron.

En el caso de *Pillot* v. *Domínguez,* 24 D.P.R. 642, hemos declarado que en los juicios de tercería debe resolverse la cuestión fundamental envuelta, cual es, a quién pertenecen los bienes embargados; y en el de *Alvarez* v. *Sucrs. de Narciso Vilaró, S. en C.,* 27 D.P.R. 791, hemos resuelto que en un pleito de tercería en que el demandante alega ser dueño de cierta propiedad embargada por el demandado y presenta aquél un título para probar sus alegaciones, puede el demandado, bajo una negación general en su contestación, presentar prueba tendente a demostrar el carácter de falso, simulado y fraudulento de tal título, y en apoyo de esa doctrina hicimos la cita de 6 C. J. 395 y 396, sección 87. Por consiguiente, siendo tal evidencia permisible a un demandado en tercería con una contestación general, con mayor razón ha de serlo cuando la simulación o falsedad del título

del tercerista se alega especialmente como defensa en la contestación, como se hizo en este caso.

[2] En cuanto a que las defensas son improcedentes por atacarse títulos en que intervinieron el Dr. Muñoz y doña Elisa Dalmau sin que sean partes en esta tercería, nos bastará decir en lo que respecta al primero de ellos que puesto que él rescindió el título que le fué otorgado por doña Elisa nada importa para este procedimiento que su título fuera simulado o no, y en cuanto a doña Elisa Dalmau puede atacarse su título de compra a su hermano sin ser parte en esta tercería, porque la mercantil demandada tiene derecho a probar la falta de título en el tercerista demostrando que la persona de quien él trae causa carecía de título para transmitirlo.

En la resolución del primer motivo del recurso está comprendida la del tercero, pues se funda en que la corte erró al declarar que la mercantil estaba autorizada para alegar el origen fraudulento del título del tercerista y para probar ese extremo.

El segundo motivo de error también está implícitamente resuelto en el primero, pues se funda en que no debió permitirse que declarara Eugenio Dalmau sobre la inexistencia del contrato de venta a su hermana y del de hipoteca que ella reconoció a favor del tercerista porque doña Elisa Dalmau no es parte en este juicio.

El cuarto motivo de error tampoco es procedente, pues si como hemos dicho Eugenio Dalmau podía declarar sobre la inexistencia de la escritura de venta que otorgó a su hermana, por los méritos de su declaración podía ser declarado simulado ese contrato.

[3] Los otros motivos del recurso pueden considerarse conjuntamente, porque se refieren a la prueba.

Resulta de la evidencia que Eugenio Dalmau fabricó la casa en cuestión quedando a deber dinero a la mercantil apelada por maderas que le suministró para ella: que en

1919 traspasó la casa a su hermana doña Elisa para que no fuese embargada y evitarse las continuas reclamaciones que le estaban haciendo, sin que fuera la venta real y verdadera y que siempre poseyó la casa a pesar de ella: que el 16 de marzo de 1920 la mercantil embargó la casa como de Eugenio Dalmau: que al exigir don Amelio E. Blondet a don Eugenio Dalmau garantía por su crédito le dijo su deudor que le daría la única casa que tenía, que figuraba a nombre de su hermana, pero que estaba en pleito; que después del embargo de la casa por la mercantil doña Elisa reconoció deber en hipoteca a Amelio E. Blondet la cantidad de $550 sin que ella tuviera tal deuda sino su hermano por cuya orden hizo la hipoteca: y que posteriormente la vendió a Blondet.

Esos hechos son suficientes para sostener la simulación de la venta de Eugenio a su hermana, la de la hipoteca reconocida por ella a favor de Blondet y la de venta a él en pago de ese gravamen hipotecario, así como que Blondet tenía conocimiento de la simulación de la venta a doña Elisa por su hermano, sin que sea obstáculo para ello que sobre dichos hechos declarara Eugenio Dalmau, pues es aplicable la doctrina expuesta en el caso de *Rosado* v. *Rosado,* 17 D.P.R. 471, según la cual los elementos esenciales de todo contrato pueden ser objeto de investigación y prueba en el juicio a fin de determinar su validez y que la doctrina de *estoppel* no es aplicable a la admisión del vendedor con respecto al recibo del precio de la venta en un contrato otorgado por documento público, al efecto de impedirle volver sobre su admisión e impugnar la existencia de la causa.

*Por las razones expuestas debe confirmarse la sentencia apelada.*